UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERMA WOODHULL,
as Personal Representative of the Estate
of Michael Woodhull, deceased,

    Plaintiff,                                          Case No. 1:04-cv-203

v                                                                    Hon. Wendell A. Miles

COUNTY OF KENT; SHERIFF LAWRENCE A. STELMA;
CORRECTIONAL MEDICAL SYSTEMS, INC.,
a foreign corporation; CORRECTIONAL MEDICAL
SERVICES, INC., a foreign corporation;
DR. NASIM YACOB, M.D.; DR. DAVID CARREL, D.O.;
DR. NAN ALT, M.D.; CATHERINE WHITE, R.N.;
TAMMY SYSWERDA, R.N.; GWEN LANSER, R.N.;
NANCY SQUIRES, R.N.; KAREN PROUDFOOT, R.N.;
SHARON FISHER, R.N.; C. SYMKO;
THE FAMILY OUTREACH CENTER, a Michigan corporation;
RYAN VEENEMAN; and
CORNERSTONE COMMUNITY MENTAL HEALTH SERVICES,
a Michigan corporation, jointly and severally,

    Defendants.
_____/

ORDER DISMISSING STATE LAW CLAIMS

       In this removal action, plaintiff Erma Woodhull alleges that the decedent, her son Michael Woodhull, died on November 3, 2001 after receiving inadequate medical care for a seizure disorder while in custody at the Kent County jail. The remaining defendants are a corporation, Correctional Medical Services, Inc. ("CMS"), which entered into a contract with the County to provide medical services to inmates at the jail, in addition to four individuals – Nasim Yacob, M.D., Daniel Carrel, D.O., Tammy Syswerda, R.N., and Gwen Lanser, R.N. – employed

as doctors and nurses responsible for providing medical care at the jail.

A motion for summary judgment filed by the remaining defendants (collectively, "the CMS defendants" unless otherwise noted) is pending (docket no. 131). However, this order does not constitute a ruling on that motion at this time. Instead, for the reasons stated below, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims against the CMS defendants, and these claims are therefore **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(1).

**Factual Background**

Nineteen year-old Michael Woodhull was incarcerated at the Kent County jail between September 11 and 14, 2001. On the latter date, Woodhull, who suffered from a seizure disorder, was transported from the jail to a local hospital via ambulance after he experienced uncontrolled seizures. Woodhull remained at the hospital until his death several weeks later on November 3, 2001. He died from complications resulting from his seizure disorder. The evidence appears undisputed that Michael Woodhull did not receive medication prescribed for his seizures between the time he was admitted to the jail on September 11, 2001 and shortly before he was hospitalized on September 14, 2001.

CMS is a private corporation which has, at all times relevant to this action, contracted with Kent County to provide certain medical services to inmates incarcerated at the Kent County jail. Nasim Yacob, M.D., Daniel Carrel, D.O., Tammy Syswerda, R.N., and Gwen Lanser, R.N. are persons who, at all times relevant to this action, were employed by CMS to provide medical services to inmates at the Kent County jail. Dr. Yacob served as Medical Director of CMS. His

duties in that position included seeing inmates at the jail requiring medical attention, in addition to reviewing the jail's medical policies and procedures. Dr. Carrel, who is also a physician, and nurses Syswerda and Lanser, who are registered nurses, were present at the jail and saw Michael Woodhull at various times during his stay between September 11 and 14, 2001.

Plaintiff Erma Woodhull, the mother of Michael Woodhull, was appointed the personal representative of the estate of her son by the Allegan County Probate Court on June 25, 2002. Plaintiff originally filed this action in Michigan's Kent County Circuit Court in February, 2004, naming as defendants Kent County, the Kent County Sheriff's Department, and Sheriff Lawrence Stelma. These defendants filed a Notice of Removal on March 24, 2004. Plaintiff later stipulated to the dismissal of the claims against the Sheriff's Department, which was dismissed from the action with prejudice in an order entered on May 3, 2004 (docket no. 13).

On July 1, 2004, plaintiff filed an amended complaint (docket no. 21) which added a number of defendants, including the CMS defendants. Plaintiff's amended complaint also added as defendants The Family Outreach Center and Cornerstone Community Health Services, as well as other individuals involved in her son's care at the jail. Plaintiff later agreed to the dismissal of the claims against Correctional Medical Systems, Inc., Nan Alt, M.D., Karen Proudfoot, R.N., and Sharon Fisher, R.N., and her claims against these defendants have been dismissed with prejudice (docket nos. 53, 89). Pursuant to a written settlement agreement, plaintiff's claims against a number of the other defendants – including the County, Sheriff Stelma, The Family Outreach Center, Cornerstone Community Health Services, Ryan Veeneman, Cathy White, R.N., and Nancy Squires, R.N. – have also been dismissed (docket no. 126). Plaintiff's claims against defendant C. Symko have also been dismissed, for lack of service (docket no. 127). The only

claims still pending in this action are two against each of the remaining CMS defendants: (1) federal claims under 42 U.S.C. § 1983, and (2) state law claims of "gross negligence, reckless indifference and willful and wanton misconduct." First Amended Complaint at 39-40.

On December 22, 2004, several months after she had filed this action, plaintiff also filed a second action in Michigan's Kent County Circuit Court arising out of these same events. In that action, plaintiff asserted malpractice claims against the CMS defendants – and others – based on Michael Woodhull's treatment at the jail. The state court dismissed that action as time-barred by Michigan's two-year limitations period applicable to malpractice actions, M.C.L. § 600.5805(6). The dismissal of the claims as time-barred was affirmed on appeal. Woodhull v. Veeneman, No. 262569, 2005 WL 2402041 (Mich. App. Sept. 29, 2005).[1]

## Discussion

Title 28 U.S.C. § 1367(a) provides as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (c) of 28 U.S.C. § 1367 further provides as follows:

---

[1] The state court's decision in the malpractice action is a proper subject for judicial notice. See Granader v. Public Bank, 417 F.2d 75, 82 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record").

>The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
>>(1) the claim raises a novel or complex issue of State law,
>
>>(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>>(3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>>(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Count VIII of plaintiff's amended complaint alleges that the CMS defendants' actions or inactions constitute "gross negligence, reckless indifference and willful and wanton misconduct under Michigan law."  First Amended Complaint and Demand for Jury Trial at 39.  These claims are based on the same facts as plaintiff's claim under 42 U.S.C. § 1983.  As part of her state law claims, plaintiff further alleges that the CMS defendants' conduct constitutes "an exception to government immunity pursuant to MCLA 691.1407."  Id.  In their motion for summary judgment, the CMS defendants have argued that this § 691.1407 does not apply here because it establishes governmental immunity and they are not within the class of persons covered by the statute.

M.C.L. §691.1407 applies to governmental immunity from tort liability, and provides in pertinent part as follows:

>**(1)** Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act,

this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

**(2)** Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> **(a)** The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> **(b)** The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> **(c)** The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

**(3)** Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

**(4)** This act does not grant immunity to a governmental agency or an employee or agent of a governmental agency with respect to providing medical care or treatment to a patient, except medical care or treatment provided to a patient in a hospital owned or operated by the department of community health or a hospital owned or operated by the department of corrections and except care or treatment provided by an uncompensated search and rescue operation medical assistant or tactical operation medical assistant.

\*   \*   \*

**(7)** As used in this section:

> **(a)** 'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Section 691.1407 expressly addresses only *immunity from tort liability* for governmental

agencies and their employees. In their motion for summary judgment, the CMS defendants argue that plaintiff has not demonstrated how the statute applies to them. In her brief in response to the motion, plaintiff has not chosen not to respond to the CMS defendants' argument that the statute is not applicable.

Even if it could be said that any of the CMS defendants fall within the scope of M.C.L. § 691.1407, the governmental immunity recognized in this statute is an affirmative defense, not a cause of action to be alleged by a plaintiff. Patterson v. Kleiman, 199 Mich. App. 191, 500 N.W.2d 761, 762 (1993), aff'd as modified, 447 Mich. 429, 526 N.W.2d 879 (1994). In her brief filed in response to the CMS defendants' motion, plaintiff does refer to her purported claims "brought under Michigan state statutory and common law for gross negligence." Here, however, plaintiff has not identified a Michigan statute which provides her with a claim in this action.

In addition, plaintiff's assertion of a common law gross negligence claim against each of the CMS defendants appears to be no more than an attempt to allege a malpractice claim in such a manner that the claim is not considered time-barred. See Sexton v. Petz, 170 Mich. App. 561, 428 N.W.2d 715, 717 (1988) (where malpractice claim was subject to dismissal based on lack of a patient-physician relationship, claims of negligence and gross negligence, which were nothing more than a restatement of plaintiffs' malpractice claim, should also have been dismissed). Although "[m]edical professionals may be liable for ordinary negligence as well as for malpractice[,]" MacDonald v. Barbarotto, 161 Mich. App. 542, 411 N.W.2d 747, 750 (1987). "a complaint may not avoid application of the two-year malpractice period of limitation merely [by] couching its causes of action in terms of ordinary negligence." Id.; see Dorris v. Detroit Osteopathic Hosp. Corp., 460 Mich. 26, 594 N.W.2d 455, 464 (1999) ("[A] complaint cannot

7

avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence") (citation omitted).

Whether this principle extends to an attempt to plead gross negligence is a question that has not been addressed by the parties. "Few aspects of negligence law have proven more frustrating to [Michigan's] courts than the construction of the term 'gross negligence'" Pavlov v. Community Emergency Medical Serv., Inc., 195 Mich. App. 711, 491 N.W.2d 874, 878 (1992), appeal denied, 442 Mich. 884, 500 N.W.2d 478 (1993). In Jennings v. Southwood, 446 Mich. 125, 521 N.W.2d 230, 235 (1994), the Michigan Supreme Court adopted the definition contained in M.C.L. § 691.1407(2) as the standard for gross negligence, or, "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." However, whether Michigan courts would recognize a separate cause of action for gross negligence – and one that is not time-barred – under the circumstances of this case presents a novel and/or complex issue of state law which should be answered first and foremost by Michigan's courts. The court therefore declines to exercise supplemental jurisdiction over the state law claims against the CMS defendants pursuant to 28 U.S.C. § 1367(c)(1), and these claims are therefore hereby **DISMISSED** without prejudice.

Entered this 27th day of March, 2006.

      /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge